The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.





Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| THOMAS DEXTER WARD AND LAURA SUE WARD, | CASE NO. 09-61841 |
| | ADV. NO. 09-6101 |
| Debtors. | |
| | JUDGE RUSS KENDIG |
| TOWN & COUNTRY CO-OP, INC., | |
| Plaintiff, | |
| v. | **MEMORANDUM OF OPINION (NOT INTENDED FOR PUBLICATION)** |
| THOMAS DEXTER WARD, et al., | |
| Defendants. | |

Defendant-debtors Thomas Dexter Ward and Laura Sue Ward ("Debtors") filed a motion for summary judgment on June 11, 2010. Plaintiff, after several extensions of time, responded on January 17, 2011. No other parties weighed in on the motion.

The court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

This opinion is not intended for publication or citation. The availability of this opinion,

1

in electronic or printed form, is not the result of a direct submission by the court.

## FACTUAL BACKGROUND

Thomas Ward is a truck driver and, for at least twenty-five years, operated a trucking business as a sole proprietor. In 2005, the business was incorporated under the name T. Ward Trucking, Inc. ("TWT"). TWT ceased operations in October 2007. Thomas Ward was the sole shareholder and in charge of operations of TWT. In conjunction with the business, both Debtor and TWT owned various trucks, tractors and trailers.

On or about November 27, 2006, TWT completed a business credit application with Town & Country Co-Op, Inc. ("Plaintiff") and was granted an open account to purchase fuel and related products. Thomas Ward personally guaranteed the account. The application was not signed by anyone on behalf of TWT. The specifics of the relationship between TWT, Thomas Ward and Plaintiff are not known, but the relationship fractured and eventually resulted in Plaintiff filing a state court lawsuit in the Ashland County Common Pleas court in March 2008. The parties entered into a consent judgment on November 26, 2008 and Plaintiff was granted judgment of $46,035.53, plus annual interest at twenty-four percent from July 31, 2008, and court costs.

In July 2008, after Plaintiff filed the state court case, Thomas Ward transferred eleven trucks to Defendant Mark Franklin ("Franklin"). All but two of the trucks were owned by TWT. Thomas Ward individually owned the remaining two trucks.

Franklin was an acquaintance of Debtor's son, Todd Ward ("Todd Ward"), also a defendant. The ultimate goal was to get the trucks titled to Debtors' son. At the time of the transfer to Franklin, Todd Ward did not have a PUCO number and could not take title to the trucks. Franklin did have a PUCO number, so he was used as the initial transferee until Todd Ward obtained a PUCO number. The trucks were later transferred to Todd Ward or one of his businesses, T & T Transport and Ashland Stone Sales, LLC.

Although there is evidence to the contrary in the record, Franklin avers that he did not pay anything for the trucks. According to Franklin, he thought the transaction was to facilitate a division of property in light of an impending divorce between Debtors. The divorce never transpired.

Debtor Laura Ward, nee Anderson, is a nurse. She was not involved in the day-to-day operations of TWT, did not have an ownership interest, and was not a party to the transfers in question, nor did she participate in the loan agreement with Plaintiff. Mrs. Ward owned land used by the business to park trucks, tractors and trailers. The only known involvement Mrs. Ward had with TWT was assistance with its tax preparation.

2

## LAW AND ANALYSIS

Motions for summary judgment are governed by Federal Rule of Bankruptcy Procedure 7056, adopting Federal Rule of Civil Procedure 56. The rule provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Debtors, as movants, bear the initial burden of proof, with the "responsibility of informing the . . . court of the basis for [their] motion, and identifying those portions [of the record] . . . which [they] believe[] demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In reviewing a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party. Adickes v. S.H.Kress & Co., 398 U.S. 144, 158-59 (1970).

The motion for summary judgment presents four arguments. First, Debtors argue that Debtor Laura Ward was not involved in the transactions, rendering relief against her inappropriate. Second, Debtors contend that the doctrine of res judicata or collateral estoppel prevents relitigation of the claims determined by the state court. Third, Debtors challenge Plaintiff's foundation for a section 523(a)(2) claim. Finally, Debtors posit that the facts do not support a section 523(a)(4) nondischargeability claim.

### I.     Laura Ward's Involvement

Debtors claim Debtor Laura Ward did not participate in the activities complained of by Plaintiff. In its responses, Plaintiff asserts that both debtors misrepresented facts and lied under oath at the 341 meeting and that Mrs. Ward owned land where the trucks were parked. (Plaintiff's Response to M. Summ. J., p. 11). As for the former allegations, Plaintiff did not identify any statements or representations made by Laura Ward. As for the latter allegation, the connection is far too tenuous to declare that Debtor Laura Ward owes Plaintiff a nondischargeable debt.

Laura Ward was not an owner of any of the trucks transferred to Mark Franklin. Although it appears that at some time during the operating of Thomas Ward's trucking business she had two vehicles titled in her name, those vehicles were not part of the allegedly fraudulent transfers. Mrs. Ward's uncontested 341 testimony establishes that vehicles were titled in her name prior to the parties' marriage or shortly thereafter in order to protect them from attachment by Thomas Ward's ex-wife. Both Debtors unequivocally stated that at least one of the two trucks which had been titled in Mrs. Ward's name was junked eight to ten years ago. Plaintiff failed to show that any of the equipment transferred to Mark Franklin was owned by Debtor Laura Ward.

3

Second, nothing in the record demonstrates that Mrs. Ward was involved in the day-to-day operations or decision-making for TWT. She was not a party to the business application between TWT and Plaintiff. Combing Plaintiff's exhibits, the only involvement that the court finds is that she assisted in the preparation of income tax returns. She did not have an ownership interest in TWT. Plaintiff failed to identify any testimony to the contrary. There is nothing to indicate Laura Ward directed any of the actions purported to cause injury to Plaintiff.

Finally, Mrs. Ward's ownership of the land simply has nothing to do with the transactions in Plaintiff's complaint. Plaintiff suggests that Mrs. Ward's ownership of the land where the trucks were parked gave her "some control and complete possession over the Converted Assets at all relevant times." (Plaintiff's Response, p. 20). The argument is unsupported by any facts in the record. Laura Ward did not own the trucks. Other than Plaintiff's bare assertions, there is no indication she exercised any dominion or control over the vehicles. There is nothing in the record that demonstrates she was involved in the transfers of the trucks.

Laura Ward's position is well-taken and the court will dismiss Debtor Laura Ward from this proceeding.

## II. Res Judicata, Collateral Estoppel, Laches and Waiver

Prior to Debtors' bankruptcy filing, Plaintiff obtained a state court judgment via a consent order from a civil case in the Ashland County Court of Common Pleas. In the present motion, Debtors contend that further litigation of the state court claim(s) is barred by the doctrine of res judicata, collateral estoppel, laches and/or waiver.

Very little is known about the previous state court case. Debtors do not deny that Plaintiff filed the suit and obtained a judgment. A copy of the judgment is attached to the amended complaint as Exhibit B. So little information is provided that the court cannot identify the counts in the state court action. The consent judgment is simply a judgment with no findings of fact or conclusions of law.

Debtors did not analyze application of the doctrines to the present facts, so the court will briefly state its reasons for denying application of the doctrines. First, dischargeability determinations are to be addressed by the bankruptcy court, not a state court. Brown v. Felsen, 442 U.S. 127, 131 (1979). Consequently, this court is not foreclosed from considering the dischargeability of the underlying debt. Second, there is simply not enough in the record to support application of collateral estoppel to any issues.

In Ohio, four conditions must be established to invoke the collateral estoppel doctrine:

> 1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue;
> 2) The issue must have been actually and directly liti-

> gated in the prior suit and must have been necessary to
> the final judgment; 3) The issue in the present suit must
> have been identical to the issue in the prior suit; 4) The
> party against whom estoppel is sought was a party or in
> privity with the party to the prior action.

Sill v. Sweeney (In re Sweeney), 276 B.R. 186 (B.A.P. 6th Cir. 2002) (citations omitted). The limited record made available in this proceeding from the state court case makes it impossible to determine the availability of collateral estoppel. Debtors bore the burden of proof in establishing the applicability of the doctrine and failed to meet that burden. *See* Day v. Moran (In re Moran), 72 B.R. 1013 (Bankr. N.D. Ohio 1987) (citing In re Whitmore, 7 B.r. 835, 838-9 (Bankr. N.D. Ga. 1980)).

Debtors premise their laches and waiver arguments on a perceived failure of Plaintiff to include counts related to fraud in the state court complaint. They conclude that Plaintiff should have addressed the fraudulent transfer of the trucks during the state court case. The court does not concur. The transfer occurred after the state court case was filed and the record does not establish when Plaintiff learned of the transfer. Further, it obtained a judgment against both Debtor Thomas Ward and TWT. Adding an additional count would have not increased the judgment or benefit to Plaintiff.

The court rejects Debtors' defense under a laches theory for two reasons. Debtors need to demonstrate that there was a lack of diligence by Plaintiff in bringing this action and that Debtors are prejudiced by that delay. Bridgeport Music, Inc. V. Justin Combs Publ'g, 507 F.3d 470 (6th Cir. 2007) (citing Chirco v. Crosswinds Cmtys., Inc., 474 F.3d 227, 231 (6th Cir. 2007) (quotation omitted)). "The Sixth Circuit uses a strong presumption that laches will not apply when the analogous statue of limitations has not run, absent compelling reason." Patton v. Bearden, 8 F.3d 343 (6th Cir. 1993) (citing Elvis Presley Enter. v. Elvisly Yours, Inc., 936 F.2d 889, 894 (6th Cir. 1991)). Debtors do not dispute the timeliness of Plaintiff's complaint. In light of this fact, and the desire to have bankruptcy courts handle dischargeability determinations, the court cannot apply the doctrine of laches.

Similarly, the court is not inclined to recognize the impermissibility of this action based on waiver. Debtors suggest that the state court lawsuit would not have been settled if they had known they could face a dischargeability complaint in this court. The possibility of bankruptcy is a peril with any judgment. Waiver is the "intentional relinquishment of a known right" and "must be supported by an agreement founded upon valuable consideration . . . and may be established by express declarations or acts manifesting an intent not to claim the right." Conn Aire, Inc. v. J.C. Leasing, 921 F.2d 276 (6th Cir. 1990) (unpublished) (citations omitted). Nothing demonstrates any intention to relinquish the right to contest dischargeability in the event one of the state court defendants filed bankruptcy.

09-06101-rk    Doc 127    FILED 03/02/11    ENTERED 03/02/11 10:55:16    Page 5 of 10

### III. Count Two: 11 U.S.C. § 523(a)(2)

Debtors argue that Plaintiff failed to set forth a viable section 523(a)(2) claim. According to Debtors, there was no indication that Debtor Thomas Ward obtained money or property from Plaintiff by fraud, misrepresentation, or false pretense. Upon review of the record, Debtors are correct.

Plaintiff created a moving target with its section 523(a)(2) claim. The amended complaint states "Defendant Ward and Ward Trucking did obtain loan advances from Plaintiff under false pretenses, false representation and/or actual fraud as he had no intentions (sic) of paying it from the sale of the trucks or trailers during the time Plaintiff's action to collect money was pending in state court." (Am. Complaint ¶ 37). There is an obvious disunion in Plaintiff's claim: nothing in the record suggests the sale of the trucks and trailers or the state court lawsuit was tied to obtaining the credit/property from Plaintiff. Nor does the record support any contention that Debtor represented an ability to cover the debt with or through a sale of the trucks and trailers, or that such was contemplated. The credit application supplied by Debtor to Plaintiff did not request a list of assets, so it is not clear that Plaintiff relied on ownership of the trucks in question in extending credit.

Possibly in recognition of this problem, Plaintiff altered its argument in its opposition to summary judgment. Now, Plaintiff contends Debtor fraudulently misrepresented that "the line of credit would be 'primarily used for business, commercial or agricultural uses'" as outlined on the credit application. (Pl.'s Resp. to M. Summ. Judg., p. 13). It is Plaintiff's position that Debtor intended, from the outset of the relationship, "to use the line of credit for his personal use." (Pl.'s Resp. to M. Summ. Judg., p. 14). This permutation in the alleged basis for the claim cannot be countenanced even if it were credible.

The new theory for the section 523(a)(2) claim reads as follows: Debtor obtained a line of credit from Plaintiff under the guise that it was for business/commercial purposes. Actually, he intended to dupe Plaintiff by using it as a personal loan, as indicated by his: (1) obtaining the loan in November 2006, (2) shutting down the business in October 2007, (3) being sued in March 2008, (4) transferring business assets in July 2008, and (5) entering in to a consent judgment in November 2008. Even viewing every fact in the light most favorable to Plaintiff, the court cannot agree.

Based on the business application, TWT was never indebted to Plaintiff. The "Applicant Statement" portion of the application was never executed on behalf of the company. Neither TWT, through Thomas Ward or another agent, or Thomas Ward individually, signed the portion of the application which stated the account "will be used primarily for business, commercial or agricultural use." Thus, this representation was never adopted. Plaintiff's own exhibit does not bear out its assertion. The only portion of the business application executed was the Personal Guarantee. TWT obtained a line of credit which Thomas Ward personally guaranteed. The record does not support Plaintiff's view that the line of credit was intended solely for business

6

purposes.

The problem with Plaintiff's section 523(a)(2) claim is that it is premised on actions that occurred after the filing of the state court case, specifically the transfer of assets while the case was pending. Paragraph thirty-two of the court for fraudulent transfer states Plaintiff's position fairly succinctly:

> The transfer or conversion of business assets including the Converted Property were (sic) perpetrated with actual intent to hinder, delay, and/or defraud creditors of Ward Trucking. The conversion and/or fraudulent transfer of the Converted Property were (sic) done in order to avoid Ward Trucking's obligations to its creditors, including without limitation creditor-Plaintiff Town and Country.

(Am. Complaint ¶ 32). The difficulty results from the fact that section 523(a)(2) addresses debts where money or property was obtained through misdeeds. Plaintiff simply has not laid out a case that Debtor obtained the line of credit nefariously. *See* MBNA America Bank, N.A. v. Hostetter (In re Hostetter), 320 B.R. 674, 683 (Bankr. N.D. Ind. 2005) (finding the ill-intent must be present "from the inception of the transactional relationship"). The court will grant Debtors' motion for summary judgment under 11 U.S.C. § 523(a)(2), resulting in dismissal of the count.

### III. Count Three: 11 U.S.C. § 523(a)(4)

#### A. Embezzlement

Debtors maintain Plaintiff cannot establish nondischargeability under either an embezzlement theory or under a breach/defalcation by a fiduciary. Frankly, the court doesn't read the amended complaint to assert a section 523(a)(4) embezzlement claim. Debtors, however, challenge Plaintiff's embezzlement claim, arguing Plaintiff failed to establish the elements, so the court will consider the argument.

Three proofs are necessary for nondischargeability based on embezzlement: (1) the creditor entrusted property to the debtor, (2) the debtor misappropriated the property for a non-intended use, and (3) there are indicators of fraud. Brady v. McCallister (In re Brady), 101 F.3d 1165 (6th Cir. 1996). Plaintiff's counter follows the argument presented under 11 U.S.C. § 523(a)(2): it entrusted TWT with a line of credit to be used for business purposes, which Thomas Ward appropriated for personal use. As outlined in Section II, *supra*, neither TWT or Thomas Ward executed the statement agreeing that the account would be used for a commercial purpose. This is immaterial, however, because Plaintiff did not show a misappropriation of its property. Debtor personally guaranteed a line of creditor for TWT. The debt was not paid. TWT disposed of assets in a suspect manner. Here's the deficiency in Plaintiff's action: the debt existed at the time TWT and Debtor disposed of the trucks. Plaintiff needs to show that the debt exists because

7

of a misappropriation, which it did not accomplish. Plaintiff does not have one scintilla of evidence that the line of credit was not used for the business, as it purports was intended. The fact that the debt was not paid from available assets is a separate issue. The trucks were not Plaintiff's property, so it cannot make an embezzlement argument for the transfer of the trucks.

B.  Fiduciary fraud or defalcation

The last challenge presented by Debtors concerns the § 523(a)(4) count for "fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). The evidence required is : "(1) a pre-existing fiduciary relationship, (2) a breach of that relationship, and (3) resulting loss." Patel v. Shamrock Floorcovering Serv., Inc. (In re Patel), 565 F.3d 963, 968 (6th Cir. 2009) (citing Bd. of Trustees v. Bucci (In re Bucci), 493 F.3d 635, 642 (6th Cir. 2007)). The working definition of "fiduciary" under section 523(a)(4) is narrow and does not encompass all fiduciary relationships. R.E. America, Inc. v. Garver (In re Garver), 116 F.3d 176 (6th Cir. 1997). To qualify, the fiduciary relationship must arise from the existence of an express or technical trust which existed before the defalcation or fraud occurred, not as a result of it. See Patel at 968 (citing Davis, 293 U.S. 328); Ronk v. Maresh (In re Maresh), 277 B.R. 339 (Bankr. N.D. Ohio 2001).

Debtor Thomas Ward was the sole owner of TWT. As its owner and director, he had a fiduciary duty to the corporation. See O.R.C. § 1701.59(E) (requiring a director to consider the corporation but making consideration of creditors permissive, not mandatory). This court has specifically found that directors do not owe creditors a fiduciary duty even when operating in the zone of insolvency. See Vucelic v. Ideal Elec. Co. (In re I.E. Liquidation, Inc.), Case No. 06-62179, Adv. No. 08-6007 (Bankr. N.D. Ohio Oct. 26, 2009).

Here, a distinguishing fact is present, namely the dissolution of the corporation. According to Plaintiff, section 1701.88(D) of the Ohio Revised Code establishes a fiduciary relationship on directors, requiring them to apply corporate assets to corporate liabilities prior to making a distribution to the shareholders during the wind down. Ohio law imposes liability on a director who votes for or assents to "[a] distribution of assets to persons other than creditors during the winding up of the affairs of the corporation, on dissolution or otherwise, without the payment of all known obligations of the corporation, or without making adequate provision therefor." O.R.C. § 1702.55(B). In Ohio, this duty results in a trust for the benefit of creditors following dissolution of a corporation. See Leyman Corp. v. Piggly-Wiggly Corp., 90 Ohio App. 506, 515 (Ohio App. 1st Dist. 1951) ("When Piggly-Wiggly Corporation took possession of and title to the assets of Piggly-Wiggly Stores, Inc., which upon its dissolution had become a trust fund, without paying anything therefor, it became a constructive trustee for the benefit of all those having enforceable claims against Piggly-Wiggly Stores, Inc."); Kesselring Ford, Inc. v. Cann, 68 Ohio App.2d 131, 133 (Ohio App. 2nd 1980) ("It is beyond cavil that the assets of a dissolved corporation are regarded as a trust fund from which claims against the corporation must be satisfied."). When Debtor Thomas Ward dissolved the corporation in October 2007, he had a duty to wind down the corporation in accordance with applicable Ohio law. Under common law, a trust was impressed on the assets of the corporation to facilitate compliance when the corporation was dissolved. Thomas Ward was the trustee. Thus, a pre-existing fiduciary

8

relationship existed when the trucks were transferred. Viewing the facts in the light most favorable to Plaintiff, there are sufficient facts to raise a question of fact as to whether Thomas Ward violated his fiduciary obligation. There is a factual dispute over whether consideration was given for the transfer of the vehicles and, if it was, how the funds were spent. Since a question of material fact exists, summary judgment is not appropriate on the 523(a)(4) count for defalcation or fraud while acting in a fiduciary capacity.

### IV. Counts One, Four and Five; Counts not pled

To help clarify and focus the issues, the court will address other items *sua sponte*. Plaintiff pled a total of five counts in the amended complaint. Count one was for "conversion, fraudulent transfer, misrepresentation and/or alter ego against all defendants." Plaintiff references Ohio Revised Code section 1336 and seeks "judgment in favor of Plaintiff and against all Defendant in such an amount as will be determined at trial, but in no event a sum less than $46,035.53 plus interest and costs." Counts four and five were against all defendants. Count four alleged a civil conspiracy, while count five set forth a claim for unjust enrichment. Both of these counts merely requested a judgment, not a determination as to dischargeability. A judgment against Thomas Ward will accomplish little for Plaintiff. Findings on these counts will not, in and of themselves, establish nondischargeability of amounts owed by Thomas Ward to Plaintiff.

In its response to the motion for summary judgment, Plaintiff includes an argument regarding dischargeability of the debt under 11 U.S.C. § 523(a)(6). Plaintiff did not plead this in its amended complaint, so the count and argument will be disregarded. To the extent Plaintiff raises arguments in its response that are not germane to Debtors' motion, the court will not consider them. The response was not filed by the dispositive motion deadline and does not move for summary judgment.

Viewing the facts in the light most favorable to Plaintiff, the court can see that the transfer bears indicia of a fraudulent transfer. Nondischargeability is not the bankruptcy code remedy for every perceived ill, however. With fraudulent transfers specifically, at times avoidance and recovery of the transfers may be an option, as under sections 544, 548 and 550. Fraudulent transfers may also serve as a foundation for denial or revocation of a discharge under section 727. Section 523 is not necessarily a cure for every ill that arises.

### CONCLUSION

Plaintiff did not set forth facts showing that Laura Ward is accountable to Plaintiff for the alleged wrongdoing. Laura Ward will be dismissed on all counts. The court does not dispute that Plaintiff has set forth allegations which may cast a shadow on Thomas Ward and would give rise to questions of fact. The problem is that the bulk of those alleged facts speak more to nonpayment of the debt rather than the origin of the debt. To be excepted from discharge, the bankruptcy code anticipates that nondischargeable debts result from identified misbehavior. Incurrence of debt and the nonpayment of it are severable. In this case, it is salient. Plaintiff's 523(a)(2) claims failed to establish that the debt was incurred by fraud or misrepresentation. The embezzlement claim under section 523(a)(4) suffered the same flaw. However, Plaintiff's has set forth a foundation for nondischargeability based on fraud or defalcation by a fiduciary under 11

U.S.C. § 523(a)(4). As a result, count two will be dismissed. The section 523(a)(4) claim, under count three, is alive only on the grounds that a fraud or defalcation by a fiduciary is alleged.

An order shall be issued immediately.

# # #

**Service List:**

Duriya Dhinojwala
Critchfield, Critchfield & Johnston, LTD
4996 Foote Road
Medina, OH 44256

Christina I. Smith
Miller Mast & Mason Ltd
88 S Monroe St
Millersburg, OH 44654

Douglas L Thrush
13 Park Ave W
#314
Mansfield, OH 44902-1714

James M McClain
105 Court St
#321
Elyria, OH 44035

10

09-06101-rk    Doc 127    FILED 03/02/11    ENTERED 03/02/11 10:55:16    Page 10 of 10